Keith Herbert MATTHEWS, Plaintiff,

v.

**TRANS WORLD AIRLINES,
INC., Defendant.**

**No. 79 Civ. 3649 (LFM).**

United States District Court,
S. D. New York.

Nov. 7, 1979.

John J. Grimes, New York City, for defendant.

Lerner, Walker, Levy & Cohen by Robert E. Levy, New York City, for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendant moves, pursuant to Rule 12(b)(3), Fed.R.Civ.P., to dismiss the complaint for improper venue.

Plaintiff, a black male, alleges racial and sex discrimination against him by defendant for terminating him from its flight attendant trainee program and refusing to employ him as a flight attendant, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Title VII has its own venue provision, which provides, in relevant part:

"Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. . . ." 42 U.S.C.A. § 2000e–5(f)(3) (1974).

Plaintiff asserts that venue is proper under each of the first three standards.

As to the first standard, the complaint does not assert any particular state in which the alleged unlawful discrimination occurred. While the complaint alleges that defendant does business and has offices in New York State, these allegations appear to apply only to the issue of personal jurisdiction. It appears from the supporting affidavit that the practice complained of occurred in Kansas. The parties agree that after plaintiff applied for the flight attendant job from his Washington, D.C., home, defendant flew him to its Breech Training Academy at Overland Park, Kansas, where he participated in a training class from which he was terminated.

■ Plaintiff admits that the termination and his concomitant nonacceptance as a flight attendant occurred in Kansas, but he asserts that the "practice" leading up to his termination might have germinated in New York, the location of defendant's executive offices. There is, however, no allegation to that effect. While the allegations do not specify any other state as the locus of the discriminatory practice, the evidence all points exclusively to Kansas, not to New York. Accordingly, we hold that venue under the first standard lies in Kansas.

Turning to the second standard, the parties agree that, as a general matter, all records regarding flight attendant trainees are retained at the Breech Academy in Kansas during training, but when a trainee is terminated the records are forwarded to defendant's Administration Center in Kansas City, Missouri.

■ The parties also agree, however, that defendant's file regarding plaintiff is now held by defendant's legal department in New York City, where it has been prior to this lawsuit, for the purpose of responding to plaintiff's charges. Plaintiff contends that the presence of the records in New York supplies venue under the "maintained and administered" standard. We cannot agree.

The fact that records are here to facilitate a response to plaintiff's complaint is irrelevant to venue determination, for presumably they would not ordinarily have been sent here but for the filing of this complaint. Had the complaint been filed in another district, defendant would most likely have forwarded the papers to its counsel in that district. To hold that venue is conferred by the mere presence of records in a district for the purpose of answering a Title VII suit would be to allow plaintiff a complete choice of venue. The specificity of the Title VII venue provision suggests that Congress did not intend such a result. *See generally Richman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 441 F.Supp. 517, 519 (S.D.N.Y.1977).

This leaves the question whether the fact that the records were sent to New York City earlier confers venue here. It appears that plaintiff's file was sent to defendant's legal department in New York City in late 1973 in response to a letter from plaintiff's then counsel regarding plaintiff's termination. It is unclear whether the file was returned to Kansas City or kept here prior to the institution of this lawsuit, but in

either case New York City was merely a temporary repository of the file, not the place where the relevant employment records are "maintained and administered."

The words "maintained and administered" suggest more than the processing of an informal or formal charge of discrimination. The words suggest the actual making of the records, their indexing, filing, organization, safekeeping, amendment and supplementation. Given the parties' agreement that trainees' files are ordinarily kept in Kansas or Missouri, we must conclude that the overall maintenance and administration of plaintiff's file occurred in those states. Moreover, plaintiff's argument assumes that his file is the only employment record "relevant" to the alleged discriminatory practice. Assuredly, however, the files of other applicants, as well as other employment records regarding the training program, have a bearing on this case, and they are kept in Kansas or Missouri. Accordingly, venue under the second standard properly lies in a district in one of those states.

 We turn finally to the third standard. Plaintiff asserts that he would have worked in New York City but for his termination. He asserts that defendant used three criteria to assign successful graduates of the training program to a base city: (1) the preference of the candidate, (2) the availability of the preferred city and (3) the seniority of the candidate, defined by chronological age. Plaintiff's first preference, as marked on his application, was New York City. Two members of his trainee class, both younger than plaintiff, successfully completed the program and were assigned to New York City. It thus seems incontrovertible that New York City would have been available had plaintiff not been terminated and that he would have been assigned here prior to his two fellow trainees upon his completion of the program.

Defendant does not deny that the three criteria listed above determined the location of successful trainees. Nor does it deny that two trainees junior to plaintiff were assigned to New York City. Defendant asserts, however, that since assignments were not made until a candidate completed training, it is impossible to tell where plaintiff would have been assigned and that accordingly venue is improper here. We disagree.

It appears from the papers that defendant had no discretion in assigning a successful trainee to a city but had to apply the three objective criteria. All of these criteria point to New York.

It is possible, of course, that, wholly apart from plaintiff's termination, intervening events might have prevented his graduation. In such a case, there would have been no assignment. Defendant thus argues that plaintiff cannot say with certainty that he "would have worked" in New York but for the termination. This interpretation of the phrase "would have worked" is too literal, for it would make the third venue standard inapplicable to any hiring situation in which there was a time lag between the alleged discriminatory practice and the date that the applicant would have begun work if hired. We cannot ascribe such an intent to Congress.

Accordingly, we hold that venue here is proper, and defendant's motion to dismiss under Rule 12(b)(3), Fed.R.Civ.P., is denied.

So ordered.